IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

In Re:

TERRI L. CRAWFORD,

Respondent.

**8:13AD4**

**FINDINGS AND RECOMMENDATION**

Pending before me is Respondent's challenge to reciprocal disbarment from practice before this court. For the reasons discussed below, the undersigned magistrate judge finds Crawford committed "conduct unbecoming a member of the bar," (NEGenR 1.7(b)), warranting disbarment.

## Table of Contents

INTRODUCTION ........................................................................................................ 2

STANDARD OF REVIEW ........................................................................................ 3

THE STATE DISCIPLINARY RECORD ................................................................ 5

   1.   The Disciplinary Grievance. ....................................................................... 7

   2.   The Disciplinary Investigation. ................................................................... 9

   3.   Disciplinary Charges. ................................................................................ 13

   4.   Pre-hearing Preparation. ............................................................................ 15

   5.   The Disciplinary Hearing. ......................................................................... 17

   6.   The Referee's Report and Recommendation. ........................................... 17

   7.   Nebraska Supreme Court Review ............................................................. 20

ANALYSIS ............................................................................................................... 23

   1.   Due Process ................................................................................................ 23

   2.   Sufficiency of Evidence. ........................................................................... 25

   3.   Sanction of Disbarment. ............................................................................ 25

RECOMMENDATION ............................................................................................ 28

## INTRODUCTION

The Nebraska Supreme Court entered a judgment of disbarment against the respondent, Terri L. Crawford, on March 1, 2013.   State ex rel. Counsel for Discipline of Neb. Supreme Court v. Crawford, 285 Neb. 321, 827 N.W.2d 214 (2013).   This court received immediate notice of the disbarment from the Nebraska Counsel for Discipline. (Filing No. 1).

A Notice and Order to Show Cause was served on Crawford on March 4, 2013. (Filing No. 3).  The notice and order directed Crawford to explain, in writing, why she should not be reciprocally disbarred from practice in this court. (Filing No. 2).  See also NEGenR 1.8(e)(2).   Crawford's response to the show cause order, with supporting affidavit, was filed on April 1, 2013.  (Filing Nos. 6 & 7).

In her response, Crawford claims this court should not impose reciprocal disbarment because she was denied her right to due process in the Nebraska forum, and "the disciplinary proceedings [were] tainted by racial or other discriminatory motivation." (Filing No. 6, at CM/ECF p. 5).  Specifically, Crawford claims:

- The Nebraska Counsel for Discipline:  1) failed to timely notify her of all the allegations against her; 2) failed to disclose the investigative information it had received; and 3) subjected her to an improper systemic, institutional, and racially discriminatory disciplinary process.

- The attorney for the Nebraska Counsel for Discipline ("relator") was hostile and biased against Crawford.

- The hearing referee denied Crawford's request that the relator be recused, and applied the wrong legal standards in overruling Crawford's Motion for a Mistrial.

- Nebraska Supreme Court ignored the unrefuted opinions of Crawford's expert witness who opined that the disciplinary proceedings against Crawford were tainted by racial animus.

Filing No. 6.

This matter was referred to the undersigned magistrate judge for findings and a recommendation. (Filing No. 5). The state disciplinary record was retrieved from the Nebraska Supreme Court, filed of record in this case, and reviewed.

## STANDARD OF REVIEW

This court will impose the same discipline imposed by another jurisdiction unless, upon review of the proceedings before the disciplining jurisdiction, the respondent attorney shows, or this court finds:

(A)    the procedure was so lacking in notice or opportunity to be heard that it resulted in a deprivation of due process;

(B)    an infirmity of proof establishing the misconduct shows that the judge could not, consistent with his or her duty, accept as final the conclusion on that subject;

(C)    the imposition of the same discipline would result in injustice;

(D)    the established misconduct warrants substantially different discipline; or

(E)    the conduct found to warrant discipline in the other jurisdiction would not constitute a violation of the ethical standards stated in Nebraska General Rule 1.7(b) and, accordingly, no discipline should be imposed in this court.

NEGenR 1.8(e)(4). This court's review is based on the "face of the record" before the disciplining jurisdiction. NEGenR 1.8(e)(4).

3

# THE STATE DISCIPLINARY RECORD

The respondent, Terri Crawford, graduated from Creighton University School of Law in 1998, and was admitted to the Nebraska bar on April 23, 2001. (Filing No. 18-4, at CM/ECF p. 4). Thereafter, she practiced law in Omaha, Nebraska, (Filing No. 18-4, at CM/ECF p. 4), and maintained her mandatory Interest on Lawyer Trust Account (IOLTA) at Commercial Federal Bank, which later became part of Bank of the West. In addition to the attorney trust account, Crawford had five other accounts at Bank of the West.

On September 11, 2009, Nathan Cheatams was arrested on several felony charges. His mother, Seleka Nolan, retained Crawford to represent Cheatams. Crawford and Cheatams entered into the standard fee agreement used by Crawford in 2009. Under the terms of that agreement, Cheatams was required to pay a $2500 retainer for Crawford's representation on the pending felony charges. Crawford's hourly billing rate for legal representation was $150.00, and this rate was to be applied against the retainer. The fee agreement stated Crawford would provide detailed monthly statements reflecting all work performed on Cheatams' case. Cheatams signed the fee agreement on September 26, 2009. He was 17 years old at the time. (Filing No. 18-1, at CM/ECF pp. 235-39, 373).

Cheatams' mother, Seleka Nolan, had suffered two strokes, was wheelchair-bound, and was receiving Social Security disability payments at the time of Cheatams' arrest. She paid the $2500 retainer fee to Crawford from a lump sum Social Security payment for benefits which had accrued while her claim was pending. (Filing No. 18-1, at CM/ECF p. 7). Crawford deposited the $2500 retainer into her trust account.

By January 5, 2010, Crawford requested an additional advance payment of fees to continue representing Cheatams. (Filing No. 18-5, at CM/ECF p. 37). Based on information received from the Douglas County Department of Corrections, Crawford had

not visited Nathan Cheatams in jail prior to demanding this second fee advance.  (Filing No. 18-2, at CM/ECF p. 16).  She had never provided either Cheatams or Nolan with a detailed billing statement explaining the fees and costs accrued during Cheatams' representation.  (Filing No. 18-5, at CM/ECF p. 27).

After substantial discussion about the lack of billing statements, Nolan gave Crawford a check for $6500 on January 5, 2010.  (Filing No. 18-1, at CM/ECF p. 31).  Crawford presented the check to the Centris Federal Credit Union on January 8, 2010.  (Filing No. 18-1, at CM/ECF p. 31).  Of the $6500, Crawford claims Cheatams already owed her $3000, and the remaining $3500 was for his future representation.  Crawford received the $3500 in cash.  Although a Bank of the West location was located less than two blocks from Crawford's office, rather than immediately deposit the $3500 in her attorney trust account, Crawford returned to her office with the cash.  She testified that the cash was placed in a manila envelope with a Commercial Federal deposit slip, and she put the envelope in a safe under her desk.  (Filing No. 18-1, p. 78; Filing No. 18-3, at CM/ECF p. 141; Filing No. 18-4, at CM/ECF pp. 22-25).  Crawford admits that the $3500 was not deposited into the trust account for at least five weeks after she received it.  (Filing No. 18-4, at CM/ECF p. 43; Filing No. 18-5, at CM/ECF p. 90; Filing No. 18-6, at CM/ECF pp. 14, 40).

Cheatams was detained in the Douglas County jail while his state criminal charges were pending.  Crawford first visited him in jail on February 17, 2010; her next visit occurred on March 15, 2010.  (Filing No. 18-2, at CM/ECF p. 16).  A pretrial conference for Cheatam's case was scheduled for April 29, 2010.  (Filing No. 18-2, at CM/ECF p. 221).  Cheatams was present; Crawford failed to appear.  (Filing No. 18-2, at CM/ECF p. 316).  Thereafter, Nolan was unwilling to pay any additional trial retainer for her son's representation.  (Filing No. 18-2, at CM/ECF p. 311).  Crawford's third and final visit

with Cheatams at the jail occurred on June 28, 2010.  (Filing No. 18-2, at CM/ECF pp. 16, 316).

Nolan contacted the Counsel for Discipline on July 16, 2010 complaining about Crawford's representation of her son.  (Filing No. 18-3, at CM/ECF p. 1).  Counsel for Discipline sent Nolan instructions on how to file a disciplinary grievance.

1.      The Disciplinary Grievance.

On August 9, 2010, Nolan sent a handwritten grievance to the Nebraska Council for Discipline, complaining that Crawford was now demanding additional money for Cheatams' representation, had never provided detailed billing statements despite Nolan's and Cheatams' past demands, and was not zealously representing Cheatams' interests. (Filing No. 18-2, at CM/ECF pp. 299-300).  Because Nolan's handwriting was difficult to read, the relator typed the grievance and forwarded it to Nolan and Cheatams for their review.  (Filing No. 18-3, at CM/ECF p. 10).  Nolan returned her edited version of the typewritten grievance on August 16, 2010; Cheatams returned his on August 27, 2010.[1] The grievances were forwarded to Crawford on September 3, 2010.  (Filing No. 18-3, at CM/ECF pp. 11-12, 15-17).

Crawford had moved to withdraw from representing Cheatams on August 13, 2010.  (Filing No. 18-2, at CM/ECF p. 241).  During the hearing on the motion to withdraw, Cheatams did not object to Crawford's withdrawal, explaining that he wanted

---

[1] Cheatams submitted a handwritten grievance to the Council for Discipline on October 16, 2010, corroborating his mother's complaints and further stating that Crawford had not worked to progress his case, and had failed to timely communicate with him or provide him with information regarding his case.  (Filing No. 18-2, at CM/ECF pp. 304-05).  Cheatams reiterated many of these same concerns in a handwritten grievance received by the Council for Discipline in July 5, 2011.  (Filing No. 18-2, at CM/ECF p. 308).

6

an attorney who would represent him.[2]  (Filing No. 18-2, at CM/ECF p. 61).  Crawford was granted leave to withdraw, and a Douglas County public defender was appointed to represent Cheatams.

Crawford forwarded "Cheatams file, excluding, of course, any documentation considered, attorney work product" to the public defender.  (Filing No. 18-2, at CM/ECF p. 26).  Crawford did not disclose her own notes about the case, including information concerning Cheatams' possible alibi for the crimes, and his cooperation with a federal prosecution.  Although Crawford's decision to withhold documents did not affect the ultimate outcome of Cheatams' case, prompt and complete disclosure could have facilitated an earlier resolution on Cheatams' behalf.  (Filing No. 18-4, at CM/ECF pp. 46, 49-50, 56-57; Filing No. 18-6, at CM/ECF p. 32).

Crawford responded to the disciplinary grievance on September 23, 2010.  She provided a copy of the fee agreement signed by Cheatams and stated she had visited Cheatams on several occasions at the Douglas County jail.  She stated her time was documented, a detailed itemization and accounting had been shown to Cheatams, and although Crawford was keeping her costs at a minimum, they now exceeded $11,000.  The billing statements provided with Crawford's response reflected aggregate, not detailed, billing.  (Filing No. 18-1, at CM/ECF pp. 42-45).  Crawford explained that Nolan did not want Crawford to withdraw as Cheatams' counsel, and any claims that Crawford failed to adequately represent Cheatams or overcharged for her services were never raised until Crawford requested additional funding for trial preparation.  (Filing No. 18-1, at CM/ECF pp. 40-41).

---

[2] At the grievance hearing, Cheatams testified that he saw Crawford's billing statement for the first time while attending the hearing on Crawford's motion to withdraw.

2.      The Disciplinary Investigation.

On October 20, 2010, the relator began investigating the grievance allegations by sending Crawford a detailed listing of additional information needed for his investigation. The deadline for responding was November 1, 2013.  (Filing No. 18-1, at CM/ECF pp. 46-47).   Crawford responded on November 1, 2013 by requesting additional time to retrieve documentation from her financial institution.   (Filing No. 18-1, at CM/ECF p. 48).  Thus began the relator's long and arduous process of trying to obtain information from Crawford.

The relator questioned Crawford's inability to timely provide her trust account documentation without first obtaining information from the bank.  The relator also asked Crawford to explain her hourly billing increments, and again asked for a complete copy of her office file regarding Cheatams' representation.  (Filing No. 18-1, at CM/ECF pp. 49-50).  The relator extended the response deadline to November 8, 2010, noting that even if Crawford was still awaiting bank records as of the new deadline, she must nonetheless respond to all other questions raised in the relator's letter.

Crawford responded on November 7, 2010 by providing partial responses to the questions raised, questioning why the grievance was filed by Nolan and not by Cheatams, and stating that the client file was still being copied and would be provided.  (Filing No. 18-1, at CM/ECF pp. 51).  The relator sent another letter requesting proof of deposits into Crawford's attorney trust account.  He expressed his surprise that Crawford did not have readily available trust account documentation as required under Nebraska Court Rule of Professional Conduct § 3-501.16 (a).  He again asked for copies of Crawford's itemized billings on Cheatams' case and a copy of Cheatam' file.  (Filing No. 18-1, at CM/ECF pp. 54-55).

Crawford explained that the trust account records were in storage, and she concluded it would be more expeditious to obtain the records from her financial institution "rather than waste precious time digging in boxes." (Filing No. 18-1, at CM/ECF pp. 56). As to the billing statements, she explained that she could not provide a day-to-day billing statement without speculating.

> [A]s a solo practitioner, we are required to wear many hats, with or without office support. While attending hearings, seeing clients, answering calls, drafting letters, and making court appearances, I also now have the personal responsibility of copying the file of Nathan Cheatams. Since it is a large file, my office copier cannot accommodate the volume, but I have taken the file to Kinko's to copy it and you will receive it as requested. This file will arrive under separate cover. However, this should not be construed as any failure on my part to cooperate with this investigation. I have been totally cooperative and will continue to do so.

(Filing No. 18-1, at CM/ECF p. 57).

The written banter between Crawford and the relator continued. On December 1, 2010, a full month after the original response deadline, Crawford provided a copy of the deposit slip and certified check for the initial $2500 retainer placed in her trust account. She further explained that the $6500 check received from Nolan in January of 2010 was negotiated at the Centris Credit Union, with $3000 deposited as earned funds and the remainder deposited in February of 2010 into the Crawford's attorney trust account at Bank of the West. She stated the $3500 was part of a $13,121 deposit, and attached copies of the deposit slip and the certified check. The deposit slip did not reflect a cash deposit of $3500. (Filing No. 18-1, at CM/ECF pp. 63, 189).

On December 14, 2010, the relator advised Crawford that her trust account was being audited. The relator requested information and the production of trust account financial documents. He also advised Crawford that her failure to provide the entire file to Cheatams' replacement counsel upon Crawford's withdrawal was improper, and asked additional questions about Crawford's billing statements. (Filing No. 18-1, at CM/ECF

pp. 70-71). Crawford responded with a letter which outlined her withdrawals from the retainer and admitted she could not provide a daily itemization of the fees and costs expended for Cheatams' representation. (Filing No. 18-1, at CM/ECF pp. 79-80).

A month later, the relator again requested documentation for the audit of Crawford's trust account. The letter stated:

> Most attorneys maintain a trust account log or record for each client for whom funds are deposited into the trust account. The log would show the date of each deposit and the date of each withdrawal of client funds. Those funds would be withdrawn in payment of expenses such as filing fees, deposition costs, settlements, or withdrawn as fees earned by the attorney. The client log or record should show that information. In 2009 and 2010, did you maintain such a record for each client from whom you received funds to be deposited into your trust account? Did you maintain such a log or record for Nathan Cheatams/Seleka Nolan? If so, please provide a copy.
>
> On any given day, a lawyer should be able to account for all funds held in trust for each client. Those funds represent advance fee payments, advance cost deposits, settlement proceeds owed to clients or third parties, and fees and expenses earned by the lawyer but not yet withdrawn.

(Filing No. 18-1, at CM/ECF p. 81).

Crawford considered the letter condescending. In her response dated January 31, 2011, she questioned whether the information requested was relevant to the initial grievances filed against her by Nolan and Cheatams, characterizing the relator's investigation as unauthorized, with a level of scrutiny that was "highly disturbing," "It certainly makes one wonder if there is other motivation for such a request under such circumstances. My question would be why is this information being requested? Is this an inquiry regarding a disgruntled client or has it turned into something else?" (Filing No. 18-1, at CM/ECF p. 89). Crawford again failed to produce the documentation requested by the relator.

The relator's response assured Crawford that she was not being "picked on:" She was being investigated because the evidence indicated she had neglected her client's case, had overcharged for attorney services, and had improperly handled client funds.

The relator explained it was therefore necessary to audit 15 months of Crawford's trust account, a request that was neither unusual nor excessive under the circumstances. Crawford was afforded until February 16, 2011 to respond to the latest request. (Filing No. 18-1, at CM/ECF pp. 92-93).

On February 25, 2011, Crawford negotiated a check for $8380.20, retaining $6000 of that amount as cash. On that same date, she deposited $3500 in cash into her Bank of the West attorney trust account. (Filing No. 18-5, at CM/ECF pp. 12, 17). According to Crawford, while she was removing the contents from her safe, she discovered the cash along with a deposit slip in a manila envelope. (Filing No. 18-1, at CM/ECF p. 96). She claimed that shortly after discovering the $3500, she gave the safe to her brother in Minnesota, but the safe was stolen from his vehicle. (Filing No. 18-2, at CM/ECF p. 23; Filing No. 18-5, at CM/ECF pp. 17-18). Crawford explained the overlooked deposit went undetected for over a year because no client funds were affected by the error. (Filing No. 18-1, at CM/ECF p. 96).

Having waited yet another month to receive the trust account documents, the relator sent a letter to Crawford, threatening to temporarily suspend Crawford's license to practice law if the information was not provided to him by March 23, 2011. (Filing No. 18-1, at CM/ECF p. 94). Crawford responded by explaining that with her system of tracking trust account payments and withdrawals, answering the relator's request was a "daunting task." She also recanted her first explanation regarding where and when she deposited the $3500 in cash received from Nolan's $6500 payment in January of 2010. She stated the $3500 was not part of the $13,121 deposit as initially stated, but was recently deposited after she found it in her safe on February 25, 2011. (Filing No. 18-1, at CM/ECF p. 96). See also Filing No. 18-1, at CM/ECF p. 192.

11

On April 4, 2011, Crawford sent a letter to the relator, complaining that, "after being provided with documentation to address the initial grievance, [the relator] is now on a 'fishing' expedition to see if there can be a 'discovery' of other matters that were not of concern to this or any client."  (Filing No. 18-1, at CM/ECF p. 141).

3.      Disciplinary Charges.

On July 22, 2011, the relator filed formal disciplinary charges against Crawford. (Filing No. 16, at CM/ECF p. 1).  The disciplinary complaint alleged Crawford breached her fee agreement with Cheatams' by failing to provide detailed monthly statements reflecting all work she performed, and she failed to comply with Nebraska rules and statutes governing attorney conduct by:

- •      commingling personal and client funds;

- •      failing to properly deposit a retainer and other fees received from Nolan into an attorney trust account;

- •      knowingly providing false information to the investigating officer in an attempt to conceal her mishandling and misappropriation of client funds;

- •      failing to provide an accounting of the fees and costs incurred for Cheatams' representation;

- •      failing to maintain records for her trust account receipts and withdrawals;

- •      terminating her representation of Nolan, but refusing to surrender papers and property to him or refund any advance payment of fees or expenses that had not been earned or incurred; and

- •      failing to cooperate with the disciplinary investigation by refusing to produce trust account checks, and information identifying the payees on those checks.

(Filing No. 16, at CM/ECF pp. 1-15).

12

Crawford received the formal charges on August 1, 2011.  (Filing No. 16, p. 199). With the assistance of counsel, Timothy Ashford, Crawford filed a response to the charges on October 12, 2011.  Crawford denied any allegations that she failed to provide competent or diligent representation of Cheatams' interests, or that she failed to inform Cheatams regarding his case, neglected the case, or charged an unreasonable fee.  She further specifically alleged:

- any mishandling of the fees she received from Nolan was not a knowing and intentional act, but rather a human error that was rectified immediately;

- she did not knowingly provide false information to the investigating officer;

- she withheld information or records after she terminated her representation of Cheatams because those records contained information protected under the work product doctrine;

- after withdrawing from representing Cheatams, she returned no money to Nolan because the amount received was less than the fees and costs she incurred—in fact Nolan still owes her money for the legal services performed;

- it is her practice to use aggregate billing, not detailed billing, and she did not "create" a bill for the purposes of defending against the disciplinary charges; and

- she responded to all inquiries from the Counsel for Discipline in a timely manner.

(Filing No. 16, at CM/ECF pp. 185-198).

4.      Pre-hearing Preparation.

The evidentiary hearing was scheduled to be held on January 26, 2012 before Michael A. Nelsen, referee.  (Filing No. 16, at CM/ECF p. 181).  There were several

discovery disputes during the prehearing preparation, resulting in orders requiring Crawford's deposition to be resumed and completed, requiring her to produce all documents identified in the relator's subpoena duces tecum, (Filing No. 16, at CM/ECF p. 177), and requiring Crawford to identify, in writing, the name and address of the person "who has the safe in question, and the date on which the safe was transferred from the Respondent to the person whose identity will be revealed."   (Filing No. 16, at CM/ECF p. 175).

Crawford's counsel, Timothy Ashford, was granted leave to withdraw. (Filing No. 16, at CM/ECF p. 175).  At Crawford' request, the evidentiary hearing was continued to February 27, 2012 to afford Crawford an opportunity to locate new counsel.  (Filing No. 16, at CM/ECF pp. 171-73).   Attorney Chris Ferdico began representing Crawford on February 7, 2012.  (Filing No. 16, at CM/ECF p. 158).   The hearing was again continued, at Crawford's request, to March 12-13, 2012.  (Filing No. 16, p. 166).

Crawford moved to consolidate the state disciplinary case with the federal disciplinary case filed in this forum on December 27, 2010.  District of Nebraska v. Crawford, 8:10-ad-00011.   Neither the referee, nor the parties in the state case, opposed consolidation.  (Filing No. 16, at CM/ECF pp. 155-165).  Crawford did not file a motion to consolidate in the federal court.  Crawford's state disciplinary hearing was rescheduled for April 24, 2012.

Crawford was deposed by the relator on December 23, 2011.  (Filing No. 18-3, at CM/ECF p. 30).  She was a difficult and evasive deponent.  By the end of the deposition, she stated she was offended by the relator's accusatory letters.  Crawford explained, "I do understand why an inquiry takes place. What I don't understand is why it appears to be very aggressive when it comes to black attorneys in Nebraska."  (Filing No. 18-3, at CM/ECF p. 213).  The relator confronted and denied Crawford's accusation of racism.

Three weeks prior to the disciplinary hearing, Crawford claimed she found a carbon copy of a deposit slip for the $3500 cash deposit at the back of a desk drawer. She produced the copy of the deposit slip at the disciplinary hearing. The referee noted that the carbon copy was in nearly pristine condition. (Filing No. 18-2, at CM/ECF p. 72, Filing No. 18-6, at CM/ECF pp. 20-23, 44).

5.     The Disciplinary Hearing.

Crawford, Nolan, Cheatams, and the Douglas County public defender who represented Cheatams in the state court testified at the disciplinary hearing. Crawford was represented by counsel, and was afforded the right to testify, call witnesses, and cross-examine the relator's witnesses. During Nolan's testimony, Crawford and her counsel were apprised of the conversations between Nolan and the relator before any grievance was filed, and of the handwritten grievances submitted to the relator before the typewritten grievance was served on Crawford. Crawford moved for a continuance or mistrial, claiming the lack of prehearing disclosure violated her due process rights. She also noted her concern that the relator discriminated against her based on race, explaining the relator's tone and questioning during her deposition indicated racial bias. The referee denied the requested continuance and the motion for mistrial.

6.     The Referee's Report and Recommendation.

The referee's report and recommendation addresses whether Crawford, in representing Cheatams and handling trust account funds relating to Cheatams, violated one or more of the following Rules of Professional Conduct:

- Section 3-501.5(f), by failing to provide an accounting for fees previously paid on behalf of Nathan Cheatams;

- Section 3-501.15(a) and (c), by failing to deposit an advance fee payment into her client's trust account;

- Section 3-501.16(d), by failing to surrender to Cheatams' subsequent counsel all papers and property to which Cheatams was entitled;

- Section 3.508.4(c), by engaging in dishonesty, fraud, deceit, and misrepresentation regarding her handling of the advance fee payment received on behalf of Cheatams; by her communications with the Counsel for Discipline regarding Respondent's client trust account, and by creating a billing summary for the purposes of the hearing;

- Section 3-508.4(d), by engaging in conduct that is prejudicial to the administration of justice by failing to timely respond to inquiries from the Counsel for Discipline regarding Crawford's representation of Cheatams, and her client trust account.

(Filing No. 16, at CM/ECF pp. 115-16.

The referee concluded it was undisputed that Crawford did not comply with the fee agreement provision requiring her to provide Cheatams with detailed monthly statements; (Filing No. 16, at CM/ECF p. 117).   He further found:

- Crawford failed to provide the Douglas County public defender with all papers and property in Crawford's file to which Cheatams was entitled; (Filing No. 16, at CM/ECF pp. 118), but she was simply mistaken in excluding what she felt was "work product" from her production of the file.  (Filing No. 16, at CM/ECF p. 118)

- Crawford did not cooperate with the Counsel for Discipline's investigation concerning her affairs, including the handling of her trust account, (Filing No. 16, at CM/ECF p. 118), resulting in the relator twice threatening Crawford with temporary suspension of her license if she remained uncooperative, (Filing No. 16, at CM/ECF p. 119);

- Crawford failed to promptly and properly deposit $3,500 of cash into her attorney trust account, (Filing No. 16, at CM/ECF p. 120);

- Crawford misappropriated this money, depositing it into the trust account only after the disciplinary investigation was underway;

- Crawford's testimony that the $3,500 cash in the manila envelope was in her safe for over a year, and then found and deposited, was not credible. (Filing No. 16, at CM/ECF pp. 130.

- Crawford's responses and some of her pleadings show not only "a reluctance to cooperate [with the Counsel for Discipline's investigation], but belligerence and a pattern of stalling." (Filing No. 16, at CM/ECF pp. 131)

- There is no evidence that the Counsel for Discipline's investigation of Crawford was motivated or impacted by racial animus. (Filing No. 16, at CM/ECF pp. 131).

- "On the basis of the entire record in this case, . . . the testimony of Ms. Crawford at the hearing was not credible, or indeed not worthy of belief in any respect in regard to the $3,500 cash" and Crawford should be disbarred." (Filing No. 16, at CM/ECF pp. 132).

Crawford moved for a new trial, claiming the Counsel for Discipline failed to produce documents which were required to be produced pursuant to a Request For Production served by Crawford; those records revealed the Assistant Counsel for Discipline was a necessary witness, and the Assistant Counsel for Discipline tampered with witnesses by showing them undisclosed documents and coaching and preparing them to testify about facts they did not know prior to meeting with him. (Filing No. 16, at CM/ECF pp. 146-148).

The referee denied the motion for new trial, concluding the previously undisclosed information had "little or nothing to do with the central issue of this matter - namely, what became of the $3,500 cash which Ms. Crawford took away from Centris Federal Credit Union on January 5, 2010." (Filing No. 16, at CM/ECF p. 136-37). Nolan's oral and written statements to the relator prior to serving the grievance on Crawford conveyed concerns over the amounts paid to Crawford, and her failure to provide detailed billing statements or fully represent Cheatams. The issue at the grievance hearing was whether

Crawford misappropriated funds, failed to appropriately manage her attorney trust account, and was uncooperative and dishonest when dealing with the relator.

      7.     Nebraska Supreme Court Review.

      Crawford sought review by the Nebraska Supreme Court on July 9, 2012, claiming the referee erred by:

- failing to grant Respondent's motion for mistrial or continuance;

- failing to grant Respondent's motion for new hearing;

- failing to grant Respondent's motion to appoint a special prosecutor;

- finding that the Respondent failed to provide an adequate explanation for her conduct, thus impermissibly shifting the burden of proof to Crawford in violation of court rules;

- Failing to find that the relator's failure to provide the relevant complaints until the time of trial violated Crawford' procedural and substantive due process rights;

- finding that Crawford failed to cooperate with the Counsel for Discipline's office in regard to the investigation of her representation of Cheatams and her handling of trust account funds in regard to Cheatams in that the finding was not supported by clear and convincing evidence;

- finding that Crawford was not truthful regarding what happened to the $3,500; and

- finding that Crawford's conduct rises to a level warranting disbarment.

(Filing No. 16, at CM/ECF pp. 107-108).   The parties submitted briefs and oral arguments before the Nebraska Supreme Court.

      The Nebraska Court denied Crawford's arguments.   As to the alleged late disclosure of communications between the relator and Nolan, the Court held that communications between Counsel for Discipline and an attorney's client are not

grievances which must be disclosed to the attorney. State ex rel. Counsel for Discipline of Neb. Supreme Court v. Crawford, 285 Neb. 321, 345, 827 N.W.2d 214, 232-33 (2013).

Agreeing with the referee, the Court found Crawford was antagonistic, evasive, and untruthful throughout the investigation and the disciplinary hearing, exhibiting "belligerence and a pattern of stalling." Crawford, 285 Neb. at 329, 827 N.W.2d at 223. The Court held Crawford persistently evaded Counsel for Discipline's request for evidence that Crawford properly deposited attorney fee advance payments from Nolan into an attorney trust account and withdrew such money only when earned, and Crawford "alternately evaded Counsel for Discipline's inquiries and attacked Counsel for Discipline for pursuing the investigation at all." Crawford, 285 Neb. at 342, 827 N.W.2d at 231. "Responding to disciplinary complaints in an untimely manner and repeatedly ignoring requests for information from Counsel for Discipline indicate disrespect for this court's disciplinary jurisdiction and a lack of concern for the protection of the public, the profession, and the administration of justice." Crawford, 285 Neb. at 354, 827 N.W.2d at 238.

The Nebraska Court held that Counsel for Discipline did not exceed the bounds of his authority by investigating matters other than those raised by Nolan and Cheatams. "It is the formal charges, not the grievance, that limit the scope of misconduct" for which an attorney may be disciplined. Crawford, 285 Neb. at 347, 827 N.W.2d at 234. If Counsel for Discipline determines there are reasonable grounds for discipline, he must reduce the grievance to a complaint specifying with particularity the facts which constitute the basis for the complaint and the grounds for discipline which appear to have been violated.

The formal charges against Crawford were served on her in advance of the disciplinary hearing, and she was afforded a full opportunity to respond. On review before the Nebraska Court, Crawford submitted the report of Dr. Omowale Akintunde, an expert who opined Crawford's disciplinary process "was entrenched with unrecognized and unacknowledged racial bias." Crawford, 285 Neb. at 351, 827 N.W.2d at 237. After

considering the expert opinions of Akintunde, the Nebraska Court found no evidence of racial bias by Counsel for Discipline.

The Nebraska Court concluded Crawford took $3,500 in unearned client funds in cash into her possession and failed to properly deposit those funds in her attorney trust account. She therefore had the burden of proving where those funds were. Crawford, 285 Neb. at 359, 827 N.W.2d at 242. Since there was no credible explanation as to what happened to the $3,500 in client funds, the Nebraska Court found the evidence supported the referee's conclusion that the funds were misappropriated.

> In summary:
>
> Crawford violated § 3–501.15(a) and (c) (failure to deposit unearned fees into trust account and withdraw only as earned), and her oath of office. In addition, the evidence is clear and convincing that Crawford has lied throughout the investigation, before the referee, and to this court, about the whereabouts of the $3,500. Because she intentionally evaded inquiry and lied about it, she violated § 3–508.4(c) and (d), and her oath of office.

Crawford, 285 Neb. at 364, 827 N.W.2d at 245.

The Nebraska Supreme Court held that the proper discipline for Crawford's cumulative acts of misconduct, including her misappropriation and commingling of client funds, lack of cooperation with Counsel for Discipline, repeated attempts and dishonesty to conceal her misconduct, and her failure to take full responsibility for her actions, warranted the sanction of disbarment. "This is true regardless of an attorney's gender, race, ethnicity, or religion. Comparing Crawford's conduct to other attorneys disciplined by this court, . . . disbarment is the appropriate sanction." Crawford, 285 Neb. at 369, 827 N.W.2d at 247.

ANALYSIS

"Though admission to practice before a federal court is derivative from membership in a state bar, disbarment by the State does not result in automatic disbarment by the federal court." Theard v. United States, 354 U.S. 278, 281-282 (1957). State disbarments are not binding upon federal courts, but they are entitled to great respect. In re Ruffalo, 390 U.S. 544, 547 (1968) ; Theard, 354 U.S. at 282. As reflected in this court's local rules, (see NEGenR 1.8(e)(4)), a federal court may rely upon a state disciplinary determination provided the attorney received notice and an opportunity to be heard on the state charges, the state's findings were supported by evidence, and there is no "grave reason" to ignore the state's decision. Selling v. Radford, 243 U.S. 46, 51 (1917) .

1.     Due Process.

The state disciplinary record affirms that Crawford received notice of all charges against her.  A hearing was held on those charges and at the hearing, Crawford was afforded an opportunity to present evidence and cross-examine any witnesses. Crawford appealed the findings of the referee to the Nebraska Supreme Court, and fully briefed her claims before that forum.  She was represented by counsel throughout.

During the course of the hearing, Crawford argued for a continuance or new hearing, claiming the initial statements by Cheatams and Nolan to the relator were not timely disclosed to Crawford, and as to those statements, the relator was a witness and was required to recuse himself from the case.  Crawford claims these undisclosed statements deprived her of a full and fair hearing.  The initial complaints made by Cheatams and Nolan provided the impetus for investigating Crawford, but by the time the hearing was convened, the statements made by Cheatams and Nolan were not the focus

21

of, or material to, the actual disciplinary charges.  Thus, the failure to disclose these statements prior to the hearing did not violate Crawford's due process rights.

Crawford claims the relator was hostile during the investigation and hearing, and the investigation, hearing, and hearing outcome were racially motivated.  As the summary of the state record establishes, the relator's investigation did not become confrontational until it was clear Crawford was being evasive and uncooperative.  While preparing for and during the disciplinary hearing, the relator was not hostile, but he did examine Crawford who, in turn, was afforded the opportunity to defend her position.  Contrary to Crawford's argument, other than the opinion of Dr. Omowale Akintunde, there is no evidence the disciplinary process or outcome was affected in any way by Crawford's race.  And the Nebraska Court was not required to accept Akintunde's opinion, particularly in light of the record as a whole and the fact that many of the allegations regarding the mishandling of client funds were uncontroverted.

Crawford's claim that her due process rights were violated during the state disciplinary proceedings lacks merit.

2.      Sufficiency of Evidence.

Crawford argues the state disciplinary ruling was not supported by clear and convincing evidence of misconduct.  As stated in this court's local rules, "[a]ttorneys must refrain from conduct unbecoming of a member of the bar." NEGenR 1.7(b)(2).

> The phrase "conduct unbecoming a member of the bar" must be read in light of the "complex code of behavior" to which attorneys are subject. . . . Essentially, this reflects the burdens inherent in the attorney's dual obligations to clients and to the system of justice. . . . " 'Membership in the bar is a privilege burdened with conditions.' [An attorney is] received into that ancient fellowship for something more than private gain. He [becomes]

22

an officer of the court, and, like the court itself, an instrument or agency to advance the ends of justice."

In re Snyder, 472 U.S. 634, 644 (1985) (alternation in original) (internal citations omitted).

There was ample evidence to support a finding that Crawford misappropriated client funds, mishandled the attorney trust account, failed to cooperate with Counsel for Discipline's investigation, and lied to the Counsel for Discipline and throughout the disciplinary investigation. Crawford violated this court's ethical standards by engaging in "conduct unbecoming a member of the bar." NEGenR 1.7(b) .

3.      Sanction of Disbarment.

Crawford claims disbarment is an excessive sanction for the conduct at issue. The court disagrees. As reflected in the referee's ruling and the Nebraska Supreme Court's decision, under Nebraska's law and disciplinary rules, commingling and misappropriating client funds is considered a serious breach of an attorney's duty to the client and the administration of justice, and such conduct warrants disbarment. Federal law is no different. Violating the lawyer's oath of office by misappropriating client funds erodes the public's trust in the profession of law, and justifies the sanction of disbarment. In re Strickland, 453 U.S. 907, 910 (1981)(Burger, C. J. and Rehnquist, J., dissenting)(remanded by the majority on procedural grounds only). See also In re Zdravkovich 634 F.3d 574, 580-581 (D.C. Cir. 2011) (holding it was not unjust to impose reciprocal disbarment where the state court concluded the attorney intentionally misappropriated the client's funds); In re Mitrano, 335 Fed.Appx. 297, 2009 WL 1561413 (4th Cir. 2009)(imposing reciprocal disbarment was warranted where the attorney had notice of charges against him and opportunity to be heard in the lower court, and the evidence supported the District's finding that the attorney misappropriated a

check payable to his client); In re Bailey, 450 F.3d 71 (1st Cir. 2006)( holding the district court did not err by refusing to convene a hearing on a reciprocal attorney disciplinary proceeding based on allegations that attorney misappropriated client funds where the attorney's additional evidence would not undermine the underlying rationale for disbarment); Wrighten v. U.S., 550 F.2d 990 (4th Cir. 1977) (holding that attorney's pleadings which acknowledged commingling of personal and office funds, although ostensibly due to lack of experience and training, is an admission of wrongdoing of sufficient magnitude to warrant disbarment); In re Doe, 95 F.2d 386 (2d Cir. 1938) (stating disbarment is fitting when an attorney has embezzled a clients' property); Thomas v. Ogilby, 44 F.2d 890 (D.C. Cir. 1930)(holding an attorney who misappropriated a clients' money was properly disbarred).

Imposing the sanction of disbarment will not "result in injustice," (NEGenR 1.8(e)(4)(C)), and Crawford's misconduct of commingling client and personal funds, misappropriating client funds, and failing to cooperate with the disciplinary investigation does not warrant "substantially different discipline" than disbarment. NEGenR 1.8(e)(4)(D).

Based on the "face of the record" before the Nebraska Supreme Court, (NEGenR 1.8(e)(4)), this court should consider the final adjudication of that forum as conclusively establishing that Crawford is guilty of misconduct sufficient to justify disbarment.

Accordingly,

RECOMMENDATION

IT IS HEREBY RECOMMENDED to the Honorable Richard G. Kopf, United States District Court Judge, that the court enter an order: 1) finding the respondent, Terri Crawford, has failed to show cause why she should not be disbarred from practice before the United States District Court for the District of Nebraska; and 2) disbarring the respondent from practice before this court in accordance with Nebraska General Rule 1.8 (e).

DATED this 15th day of July, 2013.

BY THE COURT:

_s/ Cheryl R. Zwart_
United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.